# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHONDA ESPY,<br><br>　　　　　Plaintiff,<br>　vs.<br>INDEPENDENCE BLUE CROSS,<br><br>　　　　　Defendant. | CASE NO. 12cv952-LAB (WMc)<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Plaintiff Rhonda Espy, believing that her sleep study and bariatric lap band surgeries would be mostly paid for by a health plan (the "Plan"), underwent the procedures. Defendant Independent Blue Cross paid far less of Espy's claim than she expected. She filed suit, bringing ERISA-related claims. After two unsuccessful attempts at amendment, she failed to oppose Blue Cross's second motion to dismiss the second amended complaint ("SAC"). The Court had also ordered Espy to show cause why the Court had jurisdiction, and she filed no response to that either. Because she had been warned about the consequence of failure to file written opposition, the Court construed this as her consent to the motion's being granted. The Court accepted Espy's non-opposition as her consent to entry of the order of dismissal, and granted the motion. Espy then appealed.

The Ninth Circuit determined that the Court should have considered alternatives to dismissal. The panel remanded with instructions to vacate the dismissal of the SAC, albeit without addressing the jurisdictional issue. Although the panel suggested that it thought

Espy's complaint could have survived the motion to dismiss, it made clear that was merely dicta and should not be relied on. (*See* Mandate, Docket no. 26, at 3 ("We are not in a position to assess the merits of Espy's action, but it seems likely that her complaint could have survived at the motion to dismiss stage if the motion had been considered on the merits.")) The panel did not address the jurisdictional issues, or comment on Espy's failure to respond to the Court's order to show cause. Jurisdiction and the merits of Espy's claims are therefore appropriate matters for the Court to decide. *United States v. Cote*, 51 F.3d 178, 182 (9th Cir. 1995) (*quoting In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895)) (on remand, district court may "consider and decide any matters left open by the mandate").

On remand, the Court vacated the dismissal, but ordered Espy to respond to its order to show cause, and also to file her opposition to the motion to dismiss. Because the panel opined that, in spite of having failed to file an opposition, Espy might show up at the hearing and present her arguments there, the Court's order clarified that if Espy failed to oppose the motion again, no oral argument would be held. (*See* Docket no. 25, 2:3–13).) The Court also explained that fairness demands that the parties have a chance to prepare their rebuttal or response, and that Espy should not expect to make any points at oral argument that she has not raised in her written opposition. (*Id.* at 2:9–13.) The Court also cautioned that a hearing would be held only if the Court determined it was appropriate, and that the matter might be submitted on the papers without oral argument. (Docket no. 25.)

In addition to the required briefing, Espy filed a surreply to Blue Cross's reply brief. By discrepancy order, the Court accepted this for filing.

**Jurisdiction**

Blue Cross raised the issue of standing, which is jurisdictional, by pointing out that its records suggested Espy had assigned her benefits. In view of the obligation of federal courts to confirm their own jurisdiction before reaching the merits, *see Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 94 (1998), the Court directed Espy to explain whether she did or did not assign her benefits. Espy responded ambiguously, failing to comply with the Court's direction that she squarely address this issue. The Court then ordered her to file a

memorandum showing why her complaint should not be dismissed for lack of standing. This was to be supported by a declaration under penalty of perjury stating unequivocally whether she had assigned her benefits. If she had assigned her benefits, it would be her assignee and not Espy who had standing to sue. *See Blue Cross of Calif. v. Anesthesia Care Assocs. Medical Group, Inc.*, 187 F.3d 1045, 1051 (9th Cir.1999) (citing *Misic v. Building Serv. Employees Health & Welfare Trust*, 789 F.2d 1374, 1377 (9th Cir.1986)). As the party invoking the Court's jurisdiction, Espy bears the burden of establishing it. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). And until she does so, jurisdiction is presumed to be lacking. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

She has now filed a declaration, which is little better than before. She did not file a separate memorandum. If this were the first time, Court would ordinarily accept her factual declaration at face value for now. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (holding that the party invoking federal jurisdiction bears the burden fo establishing the elements of standing at each stage of litigation). The problem here is that Espy has been told several times what she needs to show, and has not done it. All the Court has to base its decision on is her own opinion about the legal effect of something she signed, which she does not attach or quote.

The declaration says she has not assigned her "patient rights and benefits" under the Plan. Yet at the same time, it says she has directed her insurance company to send her benefit check payments directly to ACSC. This merely repeats what was known before. (*See* Docket no. 25 at 2:25–3:1.)

The Plan does not include an anti-assignment clause. In the absence of such a clause, "ERISA does not forbid assignment by a beneficiary of his right to reimbursement under a health care plan to the health care provider." *Misic v. Bldg. Serv. Emps. Health and Welfare Tr.*, 789 F.2d 1374, 1377 (9th Cir. 1986) (per curiam). *See also Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1297 (9th Cir. 2014)) (a plan's anti-assignment clause can prevent effective assignments).

/ / /

Recently, the question of whether assignment of payments constituted an assignment for purposes of ERISA has been debated in other federal courts, and the Court has taken care to review these. As discussed in *Dual Diagnosis Treatment Center, Inc. V. Blue Cross of Calif.*, 2016 WL 6892140 at *4–*5 (C.D. Cal., Nov. 22, 2016) the Third and Sixth Circuits have determined that assigning the right to payment confers on a provider standing to sue for those benefits under ERISA. The corollary is that if an assignment of rights is effective then the plan participant (*i.e.*, the patient) loses standing — at least, for the limited purposes of that one claim.

Recently, the Ninth Circuit clarified that the assignment of a right to payment (*e.g.*, to a health care provider) does not act as a more general assignment of benefits. *See generally, DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*, 852 F.3d 868 (9th Cir. 2017). The right to payment and the right to sue for that payment can be assigned. *Id.* at 876. Doing so would not assign other rights under ERISA, however, such as the right to sue for breach of fiduciary duty. *Id.* But for reasons discussed below, the only possibly viable claim Espy has is a claim for payment. If she has assigned that to ACSC, then she *may* have assigned to ACSC the right to sue for that payment.

In *DB Healthcare*, the Ninth Circuit treated an authorization of payment directly to a provider, even without use of the term "assign" or "assignment," as an assignment of limited rights to payment under ERISA. *Id.* at 876. And if the right to payment was assigned, then the provider would have the right to sue. *Misic*, 789 F.2d at 1377–78. If that happened, ACSC — the one with the right to receive payment — would have suffered the compensable injury, rather than Espy. "[A] valid assignment confers upon the assignee standing to sue *in place of the assignor*." *Id.* at 1378 (emphasis added). *See also Spinedex*, 770 F.3d at 1293 (participants who assigned their right to seek payment could not thereafter seek payment of those claims themselves).

Viewing Espy's declaration in detail, she apparently has not retained the right to sue. She says, in pertinent part:

/ / /

2. I did not assign my patient rights and benefits under my health plan.

3. I directed my insurance company to send my benefit check payments directly to the providers for medical services rendered.

4. I did not sign an authorization of representation that assigned to the medical providers my patient rights and benefits under my health plan, nor did I authorize the providers to represent me in legal proceedings that might be necessary to pursue appropriate payment of benefits under my insurance plan.

(Docket no. 27 at 2:3–9.) Measuring this against the very simple term that *DB Healthcare* treated as an assignment ("I Hereby Authorize My Insurance Benefits to Be Paid Directly to the Physician," 852 F.3d at 876) it appears Espy probably *has* assigned to ACSC her right to payment for the procedures she underwent. That is not to say she assigned all her ERISA rights to ACSC. *See id.* at 876. But the only right that is really at issue here is the right to payment, and that apparently belongs to ACSC. The fact that she never mentioned authorizing ACSC to sue or to represent her in court does not change anything. *See id.* at 877 n.7 ("An assignment of the right to receive payment of benefits generally includes the limited right to sue for non-payment under § 502(a)(1)(B).") Her own beliefs about the effect of all this merely amounts to a legal conclusion, which need not be accepted as true — and in light of *DB Healthcare* and other precedent, cannot be accepted.

This does not appear to be merely a case of inartful drafting, or a *pro se* litigant who misunderstands legal subtleties. Rather, it appears Espy really cannot establish standing to sue for non-payment. Blue Cross's briefing points out forms that suggest she intended to and did assign her right to payment. Furthermore, the issue has been raised repeatedly. She has told to be specific and unambiguous, and apparently cannot in good faith say any more than she already has.

Mindful of the Supreme Court's instruction that jurisdiction is presumed to be lacking until it is affirmatively shown, *see Kokkonen* 511 U.S. at 377, the Court finds that Espy lacks standing to sue for additional payment.

Because she attempts to raise other claims, the Court will address those on the merits. But even with regard to her claim for additional payment, some discussion of the

merits is appropriate. As the Supreme Court has explained, even if a claim is barred for some other reason it may be appropriate to discuss why a party would lose on the merits. *See Carey v. Saffold*, 536 U.S. 214, 225–26 (2002). Here, the law regarding assignments and standing does not appear to be firmly settled, and it is possible another panel of the Ninth Circuit might not follow *DB Healthcare*'s assumption that authorization of payments to a provider amounted to an assignment. *See Saffold* at 225–26 (explaining that reaching the merits may be appropriate in order to give a reviewing court alternative grounds for decision). It may also be helpful to show a *pro se* litigant "that it was not merely a procedural technicality that precluded [her] from obtaining relief." *Id.* at 226.

**Legal Standards**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a motion to dismiss, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars–Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

The pleading standard is governed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and its factual allegations must "raise the right to relief above a speculative level." *Twombly*, 550 U.S. at 555. The complaint must contain enough factual allegations that, if accepted as true, would state a claim for relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678.

The scope of review on a motion to dismiss for failure to state a claim is ordinarily limited to the contents of the complaint, including attached documents, as well as any "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.

2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

In ruling on a motion to dismiss, the Court need not accept conclusory allegations. *See Iqbal*, 556 U.S. at 678. Nor does the Court accept as true factual allegations contradicted by documents attached to the complaint or incorporated by reference into the complaint. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Because Espy is proceeding *pro se*, the Court construes her pleadings liberally, as it has done throughout this case. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). That being said, the Court cannot supply facts she has not pled. *See Ivey v. Board of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.1982). Nor can the Court make her arguments for her, suggest how she should litigate her claims, or otherwise serve as her counsel. *See Jacobsen v. Filler*, 790 F.2d 1362, 1364–66 (9th Cir. 1986).

In the course of this litigation, the Court has ruled on a number of issues. Except to the extent they are inconsistent with the panel's order, those issues are law of the case. In the absence of any extraordinary reason to do so, they will not be reconsidered or set aside. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012).

**Dismissal of the Amended Complaint, and Filing of the SAC**

In its order dismissing Espy's first amended complaint, the Court dismissed certain claims with prejudice, but gave her leave to amend others. It did not give her leave to add new claims.

Originally, Espy alleged she was entitled to payment for two surgeries and a sleep study. The sleep study accounted for a relatively small portion of her claim, and the amount Blue Cross paid towards that claim was proportionately much higher than for the surgeries.[1] Then in her amended complaint she mentioned only the surgeries. In her SAC, she added the sleep study back. But she has never developed any separate claim based on it, or tried

---

[1] Exhibits show that $406.49 of the $5,810.00 bill for the sleep study was approved for payment. (SAC, Ex. C.)

to show why Blue Cross should have paid more towards it. Rather, she treats all procedures as related, and as governed by the same Plan provisions.

The SAC brings three claims: a claim for wrongful denial of benefits under 29 U.S.C. § 1102(a)(2) (ERISA § 502(a)(2)); a claim for breach of fiduciary duty under 29 U.S.C. § 1109; and a claim for benefits under an equitable estoppel theory. She asks for judgment for "the full amount due" under the plan ($48,802.79), attorney's fees and costs, and interest.

**Motion to Dismiss**

**Unopposed Arguments**

Espy only opposed in part Blue Cross's motion to dismiss. Because this is her second chance to oppose the motion, and because she has repeatedly been warned of the consequences of failure to oppose, the Court has no realistic option but to treat her failure to oppose as an admission that she has no argument to make. The Court cannot make her arguments for her, *see Jacobsen,* 1364–65, and allowing claims to linger that Espy herself has shown no inclination to prosecute runs counter to the interests of justice, economy, and efficiency. *See* Fed. R. Civ. P. 1.

With respect to the claims Espy herself has not defended, the panel has made clear the Court is obligated to consider each of the factors set forth in *Ghazali v. Moran* before treating her failure to oppose as an abandonment of the issues. Those factors are:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases of their merits; and (5) the availability of less drastic sanctions.

46 F.3d 52, 53 (9th Cir. 1995).

All five factors weigh against Espy. After two rounds of amendment, this case is still at the motion to dismiss stage, and is no closer to resolution. Blue Cross has borne extra litigation expenses and thus far has been denied finality. And after multiple reminders and cautions, it does not appear any more likely now that Espy can offer meritorious arguments against dismissal of her claims. In fact, all indications are that she cannot. In short, to the

/ / /

extent Espy did not oppose the motion to dismiss, there is no reason to do anything other than dismiss those claims.

Specifically, Blue Cross argues that the Second Amended Complaint (SAC) fails to allege any extraordinary circumstances to support her equitable estoppel claim, *see Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996), and that she has failed to allege how Blue Cross violated its fiduciary duties towards her. It also argues that as a *pro se* litigant she cannot recover attorney's fees.

Under Ninth Circuit precedent, an ERISA beneficiary seeking to recover benefits under an equitable estoppel theory must both plead and prove, as part of her claim, "extraordinary circumstances." *Pisciotta*, 91 F.3d at 1331; *Spink v. Lockheed Corp.*, 125 F.3d 1257, 1262 (9th Cir. 1997) (holding that a plaintiff must allege extraordinary circumstances). "'Extraordinary circumstances' generally involve acts of bad faith on the part of the employer, attempts to conceal a significant change in an ERISA plan, or affirmative acts of fraud." *Biba v. Wells Fargo & Co.*, 2010 WL 4942559 (N.D. Cal., Nov. 10, 2010) (citing cases). A single misrepresentation is not enough. *See Capianco v. Long-Term Disability Plan of Sponsor Uromed Corp.*, 247 Fed. App'x. 885, 887 (9th Cir. 2007) (holding that summary judgment in favor of benefit plan was proper, where plaintiff had "shown at most one instance of [it] misrepresenting its coverage"). The SAC does not plead any extraordinary circumstances, Blue Cross asserts there are none, and Espy does not disagree nor does she attempt to show she could plead them. Because this required element is missing, and because Espy cannot correct this defect, her equitable estoppel claim is subject to dismissal with prejudice.

Espy also does not explain how Blue Cross violated its fiduciary duty, or why she would be entitled to attorney's fees.

These are not the SAC's only defects, however. As discussed below, all of Espy's claims, even the ones she attempted to defend in her opposition, must fail. Because Espy could not prevail on the merits for other reasons, treating these arguments as abandoned is appropriate under *Ghazali*.

**Entitlement to Additional Payment**

Espy does, however, argue that she is entitled to additional payment under the Plan's terms. The SAC quotes and attaches portions of a Plan document that Espy relies on to establish her claim.[2] Although she mentions three different procedures, she treats all three as subject to the same Plan terms. Blue Cross argues that, under the terms of the Plan, Espy is not entitled to relief.

The heart of the dispute is a clause that provides as follows:

> a. For services provided by Non-Preferred Facility Providers that have no contractual arrangement with the Carrier, "Covered Expenses" means the lesser of the: (a) Facility Provider's allowable charges; (b) Medicare Allowable Payment, or © Reasonable and Customary Charge for the Covered Services.

(SAC, ¶ 14.) Although Blue Cross paid a portion of Espy's claim, it did not pay for most of the services provided by her health care provider Ambulatory Care Surgery Center ("ACSC"). She agrees ACSC was a non-preferred facility provider that did not have a contract with Blue Cross, and that this clause governs her claim. The only real question concerns the meaning of subclause (b), the Medicare Allowable Payment.

Espy argues that Medicare does not have an "Allowable Payment" for the procedures that were performed on her, because ACSC is an outpatient facility, and Medicare will only "allow for" the procedure to be done in a hospital. (SAC, ¶ 15.) She supports this with a copy of the Medicare National Coverage Determinations Manual in effect at the time. Therefore, she concludes, "Medicare has no rates" for this procedure as performed on her, and subclause (b) does not apply here. (*Id.*) Her interpretation, at its heart, is that the absence of a Medicare fee schedule for a particular type of service means either that the "Medicare Allowable Payment" does not exist, or else that it is limitless.

---

[2] The Court's earlier orders explain why the Court is treating this, as well as the documents attached to the motion to dismiss, as Plan documents. *See Espy v. Independence Blue Cross*, 2013 WL 1164364 at *2 and n.1 (S.D. Cal., Mar. 20, 2013). No party has ever challenged the authenticity of any of these documents, or argued that they are not Plan documents. In fact, the document Espy attaches to the SAC and identifies as the Plan document is a printout of an earlier document Blue Cross attached to its first motion to dismiss. (*See* SAC, Ex. A (Docket no. 15 at 21) (attaching portions of Docket no. 3-4 with CM/ECF identifiers, and hand-annotating it "*The Plan").)

This is based on an erroneous reading of an incomplete version of the Plan document, and also in part on a misreading of the Medicaid Manual she cites. The Manual in fact says that bariatric lap band procedures, such as the type Espy underwent

> are only covered when performed at facilities that are: (1) certified by the American College of Surgeons as a Level 1 Bariatric Surgery Center . . .; or (2) certified by the American Society for Bariatric Surgery as a Bariatric Surgery Center of Excellence . . . .

(SAC, Ex. B (Docket no. 15 at 24).) The Manual includes a list of approved facilities, which does not include ACSC.[3] Espy has hand-annotated these pages, showing that these are the provisions she is relying on.

As an initial matter, Espy is wrong to read the Manual as she does. The Manual provides that procedures must take place in one of the approved facilities in order to be covered. It does not, as she argues, leave open the question of what payment is allowed for procedures that take place in other facilities. Instead, it makes clear those are not covered, and Medicare will not pay anything for them.

The capitalized terms in the clause quoted above are defined terms, and definitions are provided in a separate section of the document. Espy highlights all of those definitions except one, that for "Medicare Allowable Payment." (*See* SAC, Ex. A (Docket no. 15 at 15–21).) But even though she did not attach this particular page it to the SAC, it is part of the document she selected pages from to attach to the SAC, and whose authenticity and applicability she affirms. (*See* Docket no. 3-4 at 62.) Blue Cross, however, did attach that page to its motion to dismiss, and cited it. The Plan document defines "Medicare Allowable Payment" as "the payment amount, as determined by the Medicare program, for a Covered Service or supply."[4] (Docket no. 16-3 at 62.) This definition makes no reference to the existence of fee or rate schedules, and does not leave the amount undefined. Rather, it

---

[3] ACSC's letter to Blue Cross suggests that ACSC may have erroneously believed it was an approved facility. (*See* SAC, Ex. E (ACSC's letters to Blue Cross, referring to its San Diego facility as a "Medicare certified surgery center").)

[4] "Covered Service" here is a defined term within the Plan document, and refers to whether a service or supply is covered by the Plan. It does not refer to whether a service is covered by Medicare.

defines the term as whatever "payment amount" the "Medicare program" has determined. By refusing to pay anything for the type of procedure Espy had, the Medicare program has determined that the "payment amount" is zero.

Under the clause Espy is relying on, this means Blue Cross pays nothing for this procedure. That is not the same as saying it is "not covered" under the Plan, however. What it means is that Blue Cross pays nothing for the cost of the surgical procedure itself. Blue Cross did pay some other expenses, such as a portion of her claim attributable to the facilities charge. Unfortunately for Espy, that portion was relatively minor compared to the cost of the surgeries.

The Court finds the terms of the Plan unambiguously provide that the payment for the procedures that Espy had was zero. Her claim to enforce the terms of the Plan document therefore fails and must be dismissed.

**Estoppel Claims**

"ERISA preempts state equitable estoppel claims but a party may assert a federal equitable estoppel claim in an ERISA action." *Qualls By and Through Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 845 (9th Cir. 1994) (citing *Greany v. W. Farm Bureau*, 973 F.2d 812 (9th Cir. 1991)). Among other things, this requires that the party show that the provisions of the plan were ambiguous, and that oral representations interpreting the plan were made to the employee. *Id.* at 846. These are only threshold questions, and meeting these two conditions does not by itself establish an equitable estoppel claim. All it means is that the inquiry can go further. *Greany*, 973 F.2d at 822, n.9. A plaintiff cannot avail herself of an estoppel claim based on representations that would modify the plan. *Id.* at 822. Under ERISA, oral agreements or modifications cannot be relied on to contradict or override a plan's written terms. *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 986 n.2 (9th Cir. 1997).

Here, neither condition is met. The Plan provision is not ambiguous. But more than that, Blue Cross only made representations to ACSC, not to Espy, and the communications did not involve an interpretation of the Plan. Espy's exhibits show that ACSC called Blue

Cross to ask for information. (SAC, Ex. B and E.) Specifically, an employee of ACSC asked about pre-approval and about benefits, such as whether Espy was covered, whether the procedure was covered, what her deductible was, and the coverage rate. (Ex. B.) The exhibits show that the calls did not concern interpretation of the Plan's language or some ambiguity in it. (Ex. E ("When we called for benefits . . . ."))

The SAC and exhibits confirm that it was an employee of ACSC, not Espy, who spoke with Blue Cross, that any representations Blue Cross made were to ACSC, and that Espy heard about Blue Cross's remarks indirectly. (SAC, ¶¶ 12, 20, 21.) Although Espy characterizes these representations as having been made to her (*id.*, ¶ 31), this is an unreasonable interpretation of events. She has not alleged facts suggesting that ACSC was acting as her agent or representative when it called Blue Cross, or that Blue Cross thought it was speaking to Espy or to her representative or agent, nor could she. The exhibits and other allegations show that ACSC was calling on its own behalf, to reassure itself about payment, and that Blue Cross believed it was speaking to ACSC. (*Id.*, ¶ 24, Ex. B and E.)

In her surreply, Espy agrees she never spoke with Blue Cross. Instead, she argues that she directed ACSC to verify her benefits with Blue Cross, and to provide her with a copy of whatever benefit-related document Blue Cross provided her. (Docket no. 32 at 2:1–8.) This would not make ACSC her agent for purposes of asking about an ambiguity in the Plan, however. According to the surreply, Espy wanted ACSC to verify her eligibility for benefits, and to provide her a copy of Blue Cross's approval letter. She does not allege that she had a question about Plan terms, or even that she looked at the Plan document at that time. And the letters she points to as making representations were addressed to ACSC, not to her. They concern approval of coverage, not Plan terms. They don't say how much Blue Cross will pay under the Plan. Rather, they include a disclaimer about payment, and note that the approval was based on the information ACSC had submitted.

The records also do not show that ACSC's employee asked about whether it qualified as an approved facility, or told Blue Cross ACSC was not an approved facility. If anything, the exhibits suggest ACSC incorrectly believed it was an approved facility. (*SAC, Ex. E*

(ACSC's letter, referring to the facility where the surgery was performed as a "Medicare certified surgery center").

Nothing in the allegations or in any of the exhibits suggests that in providing information to ACSC, Blue Cross intended to induce Espy to undergo surgery, or to do so in an unapproved facility, or to expect a certain level of payment. ACSC might have been able to make an estoppel-based claim here, had it joined as a plaintiff. *See The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1008 (9th Cir. 1995) (holding that ERISA did not preempt claim by healthcare provider based on insurer's representation about patient coverage). But Espy cannot.

Because any representations Blue Cross made about the Plan were to ACSC and not to Espy, she cannot prevail on an estoppel claim. *See Bernstein v. Health Net Life Ins. Co.*, 2013 WL 12095240, at *5 (S.D. Cal., Apr. 4, 2013) (citing *Pisciotta*, 91 F.3d at 1331 and *Greany*, 973 F.2d at 821) ("Moreover, and fatal to Plaintiff's instant claim,. . . the Plaintiff can only prevail [on an estoppel claim] if the representations were made to him, rather than to a third party on his behalf.")

The exhibits also make clear that ACSC's employee spoke to Blue Cross about matters of interest to ACSC, not about the Plan document or interpretation of allegedly ambiguous Plan language. (*See* SAC, Ex. B.) The letters Blue Cross sent to ACSC approving coverage for the procedures (*id.*) prominently mention that approval for coverage is not a guarantee of payment. And they mention that authorization was based on the information ACSC had provided to Blue Cross. Even if ACSC thought it had secured promises of payment at a particular rate, these notices would have disabused it of that notion.

The standard for an estoppel claim is clearly not met here, and this claim cannot be saved by amendment.

**Breach of Fiduciary Duty**

Espy had abandoned her breach of fiduciary duty claim when she amended her complaint the first time, and (without leave) added it back without leave when she amended

the second time. The SAC identifies 29 U.S.C. § 1109 as authorizing this claim. Espy's theory is that by wrongly denying her claim, Blue Cross breached a duty to act in her best interests. She asks for damages for this alleged breach.

Espy cannot prevail on a breach of fiduciary claim based merely on denial of benefits. "A fiduciary's mishandling of an individual benefit claim does not violate any of the fiduciary duties defined in ERISA." *Amalgamated Clothing & Textile Workers Union, AFL–CIO v. Murdock*, 861 F.2d 1406, 1414 (9th Cir.1988). *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1414 (9th Cir. 1988) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)). Even if she could some broader practice that harmed participants more generally, she has no standing to raise other participants' claims. And as a *pro se* litigant she cannot bring claims on behalf of a class.

In her surreply, Espy attempts to recharacterize this issue, claiming that the breach consisted of "drafting and administering an ambiguous plan . . . ." (Docket no. 32 at 7:25–27.) Even assuming the Plan document were ambiguous, this would not create a cause of action for breach of fiduciary duty. *See Toohey v. Wyndham Worldwide Corp. Health & Welfare Plan*, 673 F. Supp. 2d 1223, 1231 (D. Or. 2009) (rejecting argument that drafting an ambiguous plan term creates a claim for breach of fiduciary duty). The proper remedy would be to construe the relevant provision in Espy's favor. *See id.* By the same token, administering a plan that later turns out to be ambiguous is not a breach of fiduciary duty.

The Court cannot construe this as a claim under 29 U.S.C. § 1132(a)(1)(B) (ERISA § 502(a)(1)(B)). This section authorizes suits to recover benefits due under the Plan. But for reasons discussed above, she is not entitled to benefits, and this claim would fail.

**Attorney's Fees**

Although the Court dismissed Espy's claim for attorney's fees, she added it back in her SAC. As a *pro se* litigant who is not an attorney, Espy cannot recover attorney's fees. *See Espy*, 2013 WL 1164364 at *4; *Gemmel v. Systemhouse, Inc.*, 2009 WL 3157263, at *18 (D. Ariz., Sept. 28, 2009) (citing *Kay v. Ehrler*, 499 U.S. 432, 435–37 (1991)).

/ / /

**Conclusion and Order**

The Court finds that, as to her claim for payment, Espy has failed to meet her burden of establishing standing. Even if that claim were not being dismissed for lack of jurisdiction, it would be dismissed on the merits. Espy's other claims must also be dismissed, and her complaint cannot be saved by amendment. This action is **DISMISSED WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED**.

Dated: August 6, 2018

**Honorable Larry Alan Burns**
United States District Judge